LUCAS VALLEY LAW
MARK K. de LANGIS (SBN 190083)
mdelangis@lucasvalleylaw.com
2110 Elderberry Lane
San Rafael, California  94903
Telephone:  (415) 472-3892

Attorneys for Plaintiffs
APL Co. Pte Ltd and
American President Lines, Ltd.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| APL Co. Pte Ltd, a corporation, and AMERICAN PRESIDENT LINES, LTD., a corporation,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>AL-DAN TRADING, INC., a corporation,<br><br>　　　　　Defendant. | No. 2:15-CV-6638<br><br>COMPLAINT FOR<br><br>1. BREACH OF MARITIME CONTRACT;<br>2. OPEN ACCOUNT;<br>3. COMMON COUNT FOR SERVICES PERFORMED |

　　　　Plaintiffs APL Co. Pte Ltd and American President Lines, Ltd.  (collectively "APL") complain against defendant Al-Dan Trading, Inc. ("Al-Dan" or "Defendant") and allege as follows:

COMPLAINT

## JURISDICTION AND VENUE

1. The following claims are admiralty and maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and fall within the admiralty jurisdiction of this Court under 28 U.S.C. section 1333.

2. Venue is proper in the Central District of California because the cargo that is the subject of the underlying service contract passed through the ports of Los Angeles, Long Beach, and/or San Pedro and said cargo was delivered and/or was to be delivered to Al-Dan in the city of Vernon, California, located in Los Angeles County.

## PARTIES

3. Plaintiff APL Co. Pte Ltd is, and all relevant times was, a corporation duly organized and existing under the laws of Singapore, registered to do business in the State of California.

4. Plaintiff American President Lines, Ltd. is, and at all relevant times was, a corporation duly organized and existing under the laws of the State of Delaware, registered to do business in the State of California.

5. APL is informed and believes, and on that basis alleges that defendant Al-Dan Trading, Inc. is, and at all relevant times was, a corporation duly organized and existing under the laws of the State of Florida, with an office in Vernon, California.

## GENERAL ALLEGATIONS

6. At all relevant times, APL was and still is an ocean carrier of goods for hire, *inter alia*, between U.S. and foreign ports.

7. On or about May 6, 2009, APL and Al-Dan entered into a written service contract, number EB09/0343, whereby APL agreed to transport and convey various commodities from China, Hong Kong, and Indonesia into the United States, on behalf of, and at the request of, Al-Dan.

8. The service contract between APL and Al-Dan was "subject to the maritime law of the United States, including but not limited to the United States Shipping Act of 1984, as amended by the Ocean Shipping Reform Act of 1998." Furthermore, "[t]o the extent the maritime law of the United States is silent on any given legal issue . . . the laws of the State of New York" shall govern the parties' relationship. New York State laws provide for a six year statute of limitations in which to bring an action for breach of a written contract.

9. As part of the service contract entered into between Al-Dan and APL for the transportation and carriage of Al-Dan's cargo, Al-Dan expressly agreed to tender its cargo in a quantity sufficient to satisfy a Minimum Volume Commitment ("MVC") as outlined in the service contract between the parties. Specifically, the service contract stated:

> 3. MINIMUM VOLUME COMMITMENT; DEAD FREIGHT; BOOKING
>
> (a) Merchant shall tender not less than the MVC, including specific sub-MVCs, if any as set forth in an Appendix, during the term hereof. Shipments shall be deemed within the scope of this Contract and shall be counted toward the MVC if made by Merchant's parent, subsidiary, or other affiliated companies or entities under common control, or by an authorized agent in behalf of any such entity, all of which entities must be identified on the signature page or Appendix hereto. Merchant shall remain responsible to Carrier for all obligations of non Merchant parties shipping cargo under this Contract.

10. The MVC, set forth at Appendix A, expressly obligated Al-Dan to tender a minimum quantity of carriage of 150 freight equivalent units ("FEU") before the contract's expiration date. In addition, the service contract contained a sub-minimum commitment during the period of December 1, 2009 through April 30, 2010 of 25 FEUs.

11. The service contract between APL and Al-Dan contained a liquidated damages provision (known in the trade as deadfreight) which provided protection to APL in the event that Al-Dan failed to meet the MVC, as it had promised. The

liquidated damages provision provided that:

> 3. MINIMUM VOLUME COMMITMENT; DEAD FREIGHT; BOOKING
>
> . . . .
>
> (b) If Merchant fails to tender shipments in sufficient quantity to meet Merchant's undertakings as set forth in the foregoing subparagraph 3(a), Merchant shall, within 30 calendar days of receipt of Carrier's invoice, pay deadfreight in the amount of $350 for each FEU by which the MVC (or sub-MVCs, as the case might be) exceeds the volume actually tendered. Such deadfreight shall be the Carrier's sole and exclusive remedy in the event Merchant fails to meet its MVC obligations under this Contract.

12. After the service contract expired on April 30, 2011, APL reconciled the contract to determine whether Al-Dan had fulfilled its MVC and sub-MVC, and shipped the number of FEUs as promised.

13. APL determined that during the contract's term, Al-Dan only tendered and shipped 32.625 FEUs towards its 150 FEU MVC. As for Al-Dan's sub-minimum MVC, Al-Dan only shipped 7.75 FEUs towards is sub-MVC of 25 FEUs. By only shipping 32.625 FEUs towards it MVC of 150 FEUs, Al-Dan came up short by 117.375 FEUs. In turn, by only shipping 7.75 FEUs towards its 25 FEU sub-MVC, Al-Dan came up 17.25 FEUs short.

14. Accordingly, under the terms of the contract, Al-Dan became obligated to pay APL a liquidated damages charge ("deadfreight") of $47,118.75. ($350 for each FEU short of the MVC [$350 x 117.375 = $41,081.25 and $350 for each FEU it was short of the sub-MVC [$350 x 17.25 = $6,037.50] for a total deadfreight charge of $47,118.75 [$41,081.25 + $6,037.50]).

15. On June 17, 2011, APL issued an invoice to Al-Dan for $47,118.75 and presented the invoice to Al-Dan for payment. According to the service contract's terms, Al-Dan had 30 days, or until July 17, 2011, in which to pay the invoice, or Al-Dan would be in breach of the service contract.

16. Al-Dan failed to pay the invoice within 30 days. And, despite further demands by APL, Al-Dan has failed to pay the deadfreight owed to APL in connection with the above-described service contract and there is due and owing to APL, from Al-Dan, the amount of $47,118.75 in deadfreight charges, in connection with the above-described service contract.

## FIRST CAUSE OF ACTION
### (Breach of Maritime Contract)

17. APL refers to, and by that reference incorporates as if fully set forth herein, each and every allegation set forth in paragraphs 1 through 16, inclusive, hereinabove.

18. Pursuant to the terms of the service contract entered into between the parties, Al-Dan expressly agreed that if it failed to tender the MVC and sub-MVC, it would pay the deadfreight charges due and owing under the above-described service contract.

19. APL has performed or tendered performance of all of its obligations under the service contract.

20. Al-Dan materially breached the terms of the service contract entered into between the parties by failing to tender the appropriate amount of FEUs under its MVC and sub-MVC, and by failing to pay the deadfreight charges within 30 days of receiving APL's invoice, as promised.

21. As a direct and proximate cause of Al-Dan's breach of the service contract by failing to tender the appropriate amount of FEUs under its MVC and sub-MVC, and by failing to pay the deadfreight charges, APL has suffered damages in the amount of $47,118.75 (excluding interest, costs and attorneys' fees).

## SECOND CAUSE OF ACTION

### (Open Account)

22. APL refers to, and by that reference incorporates as if fully set forth herein, each and every allegation set forth in paragraphs 1 through 21, inclusive, hereinabove.

23. Al-Dan owes APL the sum of $47,118.75 that is due with interest since July 2011, in accordance with the terms of the service contract more fully described above.

24. APL has made demand for payment upon Al-Dan and Al-Dan has acknowledged receipt of said demand.

25. Al-Dan has refused to pay and continues to refuse to pay the outstanding sum due and owing.

## THIRD CAUSE OF ACTION

### (Common Count - Services Performed)

26. APL refers to, and by that reference incorporates as if fully set forth herein, each and every allegation set forth in paragraphs 1 through 25, inclusive, hereinabove.

27. Al-Dan is indebted to APL for the amount of $47,118.75, for the services APL contracted to perform at Al-Dan's request.

28. Al-Dan has failed to pay anything towards the deadfreight charge of $47,118.75; therefore, APL is entitled to recover $47,118.75, excluding interest, for services performed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs APL Co. Pte Ltd and American President Lines, Ltd. pray as follows:

1. The Court enter judgment in APL's favor for $47,118.75, the full amount of APL's claim;
2. The Court award APL prejudgment interest on all sums as provided by law;
3. The Court award APL its costs of suit;
4. The Court award APL its attorneys' fees as per the terms of the service contract;
5. The Court award APL such other and further relief as the Court may deem proper.

DATED: August 28, 2015

LUCAS VALLEY LAW

By: /s/ Mark K. de Langis
Mark K. de Langis
Attorneys for Plaintiffs
APL CO. Pte Ltd and
American President Lines, Ltd.